WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Preston Nance,<br><br>      Plaintiff,<br><br>vs.<br><br>Allen Miser, et al.,<br><br>      Defendants. | No. CV 14-0500-PHX-SMM (DKD)<br><br>**O R D E R** |

  Plaintiff Keith Preston Nance, who is confined in the Arizona State Prison Complex, South Unit, in Florence, Arizona, filed a *pro se* civil rights Complaint under 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*. (Doc. 1, 3) On March 25, 2014, the case was referred to the Court's Early Mediation Program. (Doc. 5.) The parties were unable to resolve this case at a mediation held on April 17, 2014. Accordingly, the Court will withdraw this case from the Early Mediation Program and grant Plaintiff's *in forma pauperis* application. Most recently, Plaintiff has filed a motion for appointment of counsel. (Doc. 9.) The Court will order Defendants to answer the Complaint and deny Plaintiff's motion for appointment of counsel.

/ / /

## I. Application to Proceed *In Forma Pauperis* and Filing Fee

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee. *Id.* The statutory filing fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's

1  specific factual allegations may be consistent with a constitutional claim, a court must
2  assess whether there are other "more likely explanations" for a defendant's conduct. *Id.*
3  at 681.

4  But as the United States Court of Appeals for the Ninth Circuit has instructed,
5  courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338,
6  342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less
7  stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v.*
8  *Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

### III.  Complaint

Plaintiff alleges one count for violation of his religious exercise rights.[1] Plaintiff sues the following current or former employees of the Arizona Department of Corrections (ADC): Director Charles Ryan; Pastoral Administrator Mike Linderman; and Florence Complex Senior Chaplain Allen Miser. Plaintiff seeks injunctive, compensatory, and punitive relief.

Except as otherwise indicated, Plaintiff alleges the following in his Complaint: Plaintiff is Muslim. As Pastoral Administrator, Linderman directly supervises chaplains at all institutions, makes recommendations to the division director considering department-wide religious issues, and provides directives concerning resolution of issues related to religious publications, diets, articles, apparel, practices, observances, and grooming. Defendant Miser reports to Linderman, supervises chaplains at the Florence Complex, attends wardens' meetings, creates and manages religious programs, and serves as a contact for religious activities.

Plaintiff alleges that he has been denied halal religious oils and has been restricted

---

[1]  This is the third case filed by Plaintiff asserting violation of his religious exercise rights. On April 6, 2012, Plaintiff filed his first case. *Nance v. Miser*, No. CV12-0734-PHX-SMM, Doc. 1. In that case, the Court denied the defendants' motion for summary judgment and dismissed Plaintiff's RLUIPA damages claims on October 31, 2013, but the defendants have filed a motion for leave to file another motion for summary judgment. *Id.*, doc. 69, 124. On February 12, 2013, Plaintiff filed a second civil rights case. *Nance v. Miser*, No. CV13-0313-PHX-SMM, Doc. 1. On September 22, 2014, the Court granted Defendants' motion for summary judgment, which Plaintiff has appealed to the Ninth Circuit Court of Appeals. *Id.*, Doc. 38.

**TERMPSREF**

from growing a beard more than a ¼ inch long.  According to Plaintiff, at least one other inmate has been permitted to grow a beard several inches long.  Plaintiff contends that policies concerning halal religious oils and beard restrictions substantially burden his religious exercise and the policies are not the least restrictive means to further any legitimate, compelling penological interest.  He also contends that the beard length policy has not been equally enforced as to similarly situated inmates and thereby violates his equal protection rights.[2]

In September 2010, Plaintiff sought leave from Miser to grow a beard more than ¼ inch long in accordance with his sincerely held belief in Islam.  Miser denied Plaintiff's request as well as his request for a religious diet.  Plaintiff submitted a grievance.  On May 25, 2011, Director Ryan approved a religious diet and a shaving waiver.  On June 16, 2011, Miser signed Plaintiff's religious shaving waiver, which allowed Plaintiff to grow a beard up to ¼ inch long.

On October 12, 2013, Plaintiff delivered two Inmate Letters to South Unit Chaplain Lee to be given to Miser.  One Inmate Letter addressed the policy limiting beards to ¼ inch, A02-110-013, and the second addressed the denial of halal scented oils for religious use.  On October 23, 2013, Plaintiff's Inmate Letter concerning the beard policy was returned to Plaintiff by Miser because it contained more than one page and was accompanied by attachments, neither of which was allowed to be submitted with Form 916.1 (Inmate Letter).  The next day, Plaintiff resubmitted his Inmate Letter to Miser but omitted attachments.  On November 4, 2013, Plaintiff received a response from Miser denying his request to grow his beard more than ¼ inch long as inconsistent with then prison policies.  On November 26, 2013, Plaintiff submitted an informal resolution.  On December 3, 2013, Plaintiff received a response from Corrections Officer III Staab in

---

[2] Plaintiff asserts that inmate Seymour Abdullah challenged the beard length policy on religious grounds and that ADC settled the claim by paying him $2,500 and allowing him to grow his beard up to five inches, referring to *Abdulluh v. Schriro*, No. CV08-0255-TUC-CKJ.  On May 17, 2012, the parties stipulated to dismissal of the action.  The Court subsequently denied the parties' motions to rescind or enforce the settlement.

which Staab stated that he lacked the authority to modify the policy and told Plaintiff that he had to abide by the policy, citing Director's Order (DO) 704.02.

On December 9, 2013, Plaintiff submitted a formal grievance concerning the beard policy. On December 11, 2013, Plaintiff received an Inmate Grievance Supplement signed by Assistant Deputy Warden Cottrell for Deputy Warden Heet. In it, Cottrell informed Plaintiff that Miser had responded that he (Miser) could not grant religious privileges that were not consistent with current ADC policies. On December 12, 2013, Plaintiff submitted a grievance appeal to Florence Complex Warden Hetmer, in which Plaintiff asserted that the beard policy burdened his religious exercise and violated equal protection where ADC officials had accommodated another inmate, i.e., Abdullah. On January 14, 2014, Plaintiff forwarded his final grievance appeal to Ryan. Plaintiff states that he did not receive a response from Ryan within the time frame provided.

Plaintiff also alleges that his religious exercise and his equal protection rights have been violated where he is restricted from "scented Halal religious oils for religious purposes" but current ADC policy allows Native American and Jewish inmates the opportunity to use religious ceremonial items during religious services and those items are otherwise stored in a secured area. Plaintiff requested an accommodation of the total ban on Halal oils with the opportunity to store such oils in a secured area when not being used for religious purposes.

On October 18, 2013, Plaintiff received a response to his Inmate Letter concerning Halal oils stating that his request had been sent to the Central Office for consideration. On October 21, 2013, Plaintiff submitted an informal grievance to Corrections Officer (CO) III Odom after not having received a further response to his informal grievance. On November 4, 2013, Odom responded denying Plaintiff's request for scented oils for religious purposes as not allowed according to Miser and Linderman. On November 5, 2013, Plaintiff submitted a formal grievance concerning the denial of scented oils for religious purposes. On November 6, 2013, Plaintiff received a response from Odom on behalf of DW Heet stating that Miser and Linderman had advised that the "policy in

1  regards to scented oils will not be modified to allow purchase of scented oils." (Doc. 1 at
2  3J.) The same day, Plaintiff submitted a grievance appeal to Complex Warden Hetmer.
3  On November 19, 2013, Plaintiff received a response from Linderman to Plaintiff's
4  October 12 Inmate Letter, stating that unscented prayer oils were approved for Plaintiff's
5  religion, but that scented oils were not approved for any religion. Linderman further
6  stated the issue had been litigated by ADC and that it had prevailed in denying scented
7  prayer oils "as the preferred method of ablution is soap and water," which were readily
8  available to Plaintiff. (*Id.* at 3K.) Linderman further stated that if scented prayer oil was
9  donated for use in group ceremonies, it could be made available in a manner similar to
10 donated ceremonial supplies for other religions. Plaintiff contends that officials failed to
11 cite a compelling governmental interest justifying the denial of Plaintiff's ability to buy
12 Halal scented oils, which are secured when he is not using it for religious purposes, while
13 allowing the use of donated scented oils in religious ceremonies by groups, which is
14 secured when not in use of group ceremonies.
15      On December 10, 2013, Plaintiff received a response to his inmate grievance from
16 Complex Warden Hetmer affirming the DW denial of Plaintiff's grievance. Hetmer
17 stated that "the scented oils previously authorized were removed due to inmates misuse
18 of them" and that Plaintiff failed to identify how use of unscented oils burdened his
19 religious exercise. (*Id.*) On December 11, 2013, Plaintiff appealed to Director Ryan
20 stating that he had not received Hetmer's response within the policy time frame. In doing
21 so, Plaintiff cited a case filed by another inmate, *see Sprouse v. Ryan*, in which Judge
22 Sedwick noted that a policy change allowed the plaintiff to order and receive donated
23 religious items from an approved vender and mooted the plaintiff's remaining claims.
24 *Sprouse v. Ryan*, No. CV11-0462-PHX-JWS (JFM) (D. Ariz. Apr. 26, 2013), doc. 64.
25      On February 11, 2014, Plaintiff was summoned to Chaplain Lee's office. Lee
26 informed Plaintiff that Linderman had asked Lee to get Plaintiff's answers to two
27 questions concerning the beard length issue. First, Linderman wanted to know how
28 Plaintiff's religious exercise was substantially burdened by the beard limit policy.

1  Second, Linderman wanted to know how long Plaintiff wished to grow his beard.
2  Plaintiff responded that his faith required him to grow a beard longer than ¼ inch and that
3  Halal scented oils were also part of Sunnah practice of Prophet Muhammad.  were
4  alsopolicy he South Unit office of the chaplain.  On February 18, 2014, Plaintiff received
5  a response from Ryan stating that the issue of scented oils had been litigated and upheld
6  by courts and that Plaintiff was only allowed to purchase unscented oils.

7  Plaintiff contends that ADC previously allowed him to have Halal scented oils and
8  have acknowledged Muslim ceremonies in which such oils are used.  Plaintiff contends
9  that restrictions on using such oils substantially burdens his religious practice.  Plaintiff
10 further contends that Defendants are intentionally discriminating against him based on his
11 membership in a "protected class," apparently referring to his religion.

12 Plaintiff sufficiently alleges a violation of his First Amendment religious exercise
13 rights, his Fourteenth Amendment equal protection rights, and RLUIPA.  Defendants will
14 be required to respond to the Complaint.

15 **IV.     Motion for Appointment of Counsel**

16 Plaintiff seeks the appointment of counsel due to his indigence, incarceration, lack
17 of access to legal resources, complexity of the case and applicable law, limited legal
18 experience, legal representation of Defendants, efficiency, and constraints on Plaintiff's
19 ability to conduct discovery.  There is no constitutional right to the appointment of
20 counsel in a civil case.  *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266,
21 269 (9th Cir. 1982).  In proceedings *in forma pauperis*, the court may request an attorney
22 to represent any person unable to afford one.  28 U.S.C. § 1915(e)(1).  Appointment of
23 counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances"
24 are present.  *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).  A determination
25 with respect to exceptional circumstances requires an evaluation of the likelihood of
26 success on the merits as well as the ability of Plaintiff to articulate his claims *pro se* in
27 light of the complexity of the legal issue involved.  *Id.*  "Neither of these factors is
28 dispositive and both must be viewed together before reaching a decision." *Id.* (quoting

*Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Having considered both elements, it does not appear at this time that exceptional circumstances are present that require the appointment of counsel in this case. Plaintiff is in no different position than many *pro se* prisoner litigants. Thus, the Court will deny without prejudice Plaintiff's motion for appointment of counsel.

**V.   Warnings**

**A.   Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

**B.   Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.   Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.   Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

TERMPSREF

- 8 -

**IT IS ORDERED:**

(1) This case is withdrawn from the Court's Prisoner Early Mediation Pilot Program and the stay is vacated.

(2) Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. 3) is **granted**.

(3) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(4) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Ryan, Linderman, and Miser.

(5) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(7) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the**

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

**summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

  (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

  (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

  (9) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

  (10) Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

  (11) Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

  (12) Plaintiff's motion for appointment of counsel is **denied**.  (Doc. 9.)

  (13) This matter is referred to Magistrate Judge David K. Duncan pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as

1  authorized under 28 U.S.C. § 636(b)(1).

2  DATED this 21st day of October, 2014.

Stephen M. McNamee
Senior United States District Judge